**Ernesto ATUESTA and Enrique Atuesta, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. A14–88–922–CR, B14–88–923–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 8, 1990.

Discretionary Review Refused
June 27, 1990.

Mike DeGeurin, Houston, for appellant.

Winston E. Cochran, Jr., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

In separate indictments the two appellants were charged with actual delivery of cocaine to Curtiss Van Dyke. The cases were tried together and the court found both appellants guilty and assessed punishment for each of them at confinement in the Department of Corrections for seven years and a fine of $25.00. Appellants bring three points of error alleging: (1) the evidence is insufficient to support a convic-

tion for actual delivery; (2) wiretap evidence should have been suppressed because probable cause was lacking to justify issuance of an interception order; and, (3) pen register evidence did not properly qualify as basis for a wiretap request. We need review only point of error number one because we hold the evidence is insufficient. Accordingly, we reverse the judgments and order judgments of acquittal entered.

Department of Public Safety officers were investigating organized narcotics activity involving appellants who are brothers, "Ernesto" and "Enrique". The District Attorney's office obtained judicial permission for a pen register to record outgoing phone calls from a liquor store in southwest Houston from which appellants were believed to be trafficking in drugs. Permission was later granted for voice recording devices which would allow monitoring and transcription of calls made.

The written transcription of two telephone conversations recorded by the Texas Department of Public Safety, Narcotics Service on March 30, 1987, was entered into the appellate record by stipulation of the parties. The transcription is as follows. (All commentary by the transcribing officer for the Texas Department of Public Safety, Narcotics Service, has been deleted.):

ERNESTO = Ernesto Atuesta

CURTISS = Curtiss Van Dyke

Phone Call # 1—5:44 p.m.:
ERNESTO: Play a guitar or trombone.
CURTISS: Hello?
ERNESTO: Kur?
CURTISS: Yea!
ERNESTO: How you doing, my friend?
CURTISS: Alright ERNESTO, how you doing?
ERNESTO: Oh, pretty good. What's going on?
CURTISS: Oh, not much, ahh, um, can you get me two of them tonight?
ERNESTO: Yea.
CURTISS: Okay.

ERNESTO: Guitar, trombone or flute?

CURTISS: Pardon?

ERNESTO: Guitar, guitar, trombone or flute?

CURTISS: Quiet down, you guys! One more time.

ERNESTO: Guitar, trombone or flute?

CURTISS: Ah ... guitar?

ERNESTO: Guitar, yea, remember?

CURTISS: Yea?

ERNESTO: Okay, you like to play guitar?

CURTISS: Aah ... yea, I like to play guitar, yea.

ERNESTO: Okay, tonight?

CURTISS: Aah ... yea, tonight around nine, nine thirty?

ERNESTO: Nine, nine thirty, okay.

CURTISS: Aah ... let me call you back to make sure about what time, okay?

ERNESTO: Okay, no problem.

CURTISS: Okay.

ERNESTO: Okay, bye.

CURTISS: Bye.

Phone Call # 2—8:26 p.m.:

CURTISS: Hello?

ERNESTO: Hello CURT, how you doing?

CURTISS: Yea.

ERNESTO: Where are you?

CURTISS: Alright, aah, you ready to play?

ERNESTO: Yea, okay! Play guitar?

CURTISS: Yea, okay!

ERNESTO: Good.

CURTISS: I'll bring two guitars.

ERNESTO: Two guitars!

CURTISS: Yea.

ERNESTO: Okay.

CURTISS: Alright?

ERNESTO: Okay, no problem, aah ... you know what it is eh, eh, umm, Wilcrest and Harwin?

CURTISS: Yea.

ERNESTO: Remember, okay, what time is good for you?

CURTISS: Aah ... one hour.

ERNESTO: One hour, okay.

CURTISS: Be aah ... nine thirty.

ERNESTO: Nine thirty?

CURTISS: Yea.

ERNESTO: Okay.

CURTISS: Okay.

ERNESTO: You and aah ... get to Harwin and you follow ENRIQUE, okay?

CURTISS: Yea, okay.

ERNESTO: Okay, aah, bye-bye.

After the first of the two telephone calls was made, Houston police immediately set up surveillance at Van Dyke's residence. They observed him leaving later that evening in his van. They followed him to the vicinity of Wilcrest and Harwin in Houston where Enrique Atuesta also arrived in his car. Enrique drove his vehicle to the rear of a nearby apartment complex. Van Dyke followed. When both vehicles were parked, Van Dyke went over to Enrique's car and got in the passenger's side. The observing police officers had no way of knowing what took place while Van Dyke was with Enrique for one or two minutes. Van Dyke returned to his own vehicle. He was not observed to be carrying anything. Van Dyke drove away. He was stopped by police for traffic violations. Police did a "pat-down" search of Van Dyke and a passenger in the van, Ronald Knotek. Van Dyke had approximately $700.00 on him, but no contraband. Knotek had sixty grams of cocaine in his right sock. Van Dyke and Knotek were arrested but were immediately released with charges pending. Neither of the Atuesta brothers was apprehended until approximately three months later when they were indicted. Appellants were indicted for actual delivery, constructive delivery and sale of a controlled substance. The State abandoned the second and third paragraphs of the indictments, leaving only the first paragraph of each one:

" ... intentionally and knowingly deliver by actual transfer to CURTISS VAN DYKE a controlled substance, namely, COCAINE, weighing by aggregate weight, including any adulterants and dilutants, more than 28 grams and less than 200 grams."

Motions to suppress evidence were denied in pre-trial proceedings. Appellants waived trial by jury and entered pleas of not guilty, stipulating to the use of evidence presented at the suppression hearing.

The State argues that while there was no direct evidence that Enrique Atuesta delivered cocaine to Van Dyke, the totality of the circumstances supports that conclusion, and Ernesto is implicated by the law of parties.

In reviewing the sufficiency of the evidence to support a conviction we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560; *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989) (reconfirming the *Jackson* standard of review). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App.1986). It is not required that every fact point directly and independently to the guilt of the accused. The cumulative force of all the incriminating circumstances may be sufficient to support a guilty verdict. *Harris v. State*, 738 S.W.2d 207, 220 (Tex.Crim.App.1986) (op. on reh'g), *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 159 (1987); *see Ruben v. State*, 645 S.W.2d 794, 796 (Tex.Crim. App.1983); *Gonzales v. State*, 681 S.W.2d 270, 273 (Tex.App.–San Antonio 1984, no pet.).

 In applying the *Jackson* standard of review to circumstantial evidence cases, the exclusion-of-every-reasonable-hypothesis-but-guilt test is used. *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983). That is, a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt. *Autry v. State*, 626 S.W.2d 758, 761 (Tex.Crim.App.1982), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147.

Proof amounting only to a strong suspicion or mere probability is insufficient. *Schershel v. State*, 575 S.W.2d 548, 550 (Tex. Crim.App.1979). Mere presence in the vicinity of a controlled substance is not sufficient to sustain the State's burden of proof. *See Humason v. State*, 728 S.W.2d 363 (Tex.Crim.App.1987); *Stewart v. State*, 756 S.W.2d 798, 800 (Tex.App.—Dallas 1988, pet. ref'd).

■ The circumstantial evidence in this case is neither strong enough nor conclusive enough to support a conviction because it fails to show any affirmative link of "delivery" from the Atuesta brothers to Van Dyke, as set forth in the indictments. While we may infer from the circumstances that the transcribed phone conversations describe the planning of a drug delivery, there is nothing in evidence to show completion of any delivery:

1. Enrique was not observed to have drugs in his possession;
2. Van Dyke was not seen carrying anything when he left Enrique's car;
3. Van Dyke, when searched, had no drugs in his possession; and
4. Drugs found in Knotek's sock were not proved to ever have been in the possession of Van Dyke.

There are other reasonable hypotheses which we cannot exclude. The facts support hypotheses that: (1) there was no delivery at all; or (2) Van Dyke delivered drugs to Enrique[1].

Applying the standard of review recited above, no rational trier of fact could have found all the essential elements of "delivery by actual transfer" beyond a reasonable doubt. *See Butler v. State*, 769 S.W.2d at 239.

Points of error number one of both appellants are sustained. The court below is directed to enter judgments of acquittal to the offenses charged.

---

[1]. See text of the second telephone conversation where Van Dyke says, "I'll bring two guitars".