Charles Sanders **WARTEL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–91–00010–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 7, 1992.

Carol J. Carrier, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Winston E. Cochran, Jr., Chuck Noll, Asst. Dist. Attys., for appellee.

Before MIRABAL, DUGGAN and WILSON, JJ.

OPINION

MIRABAL, Justice.

A jury found appellant, Charles Sanders Wartel, guilty of delivery of a controlled substance, to wit, less than 28 grams of cocaine. The jury assessed punishment at 10–years confinement with a recommendation of probation. We affirm.

■ In his first point of error, appellant asserts the evidence is insufficient to prove delivery because there is evidence only of appellant's presence at the scene and nothing more.

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The entire body of evidence is reviewed to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime, and not just a plausible explanation of the crime. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989); *see also Blankenship v. State*, 780 S.W.2d 198, 206 (Tex.Crim.App.1989) (op. on reh'g). The standard of review is the same for both direct and circumstantial evidence. *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984).

On April 28, 1990, undercover police officer L.J. Allen, participating in a "buy-bust" operation, knocked on the front door of 1204 Danube. The police staged the operation as a result of complaints about drug activity from neighbors in the community. The police did not have a warrant.

A man answered the door, and Allen said he wanted "a 20," street slang for $20 worth of crack cocaine. The man led him into a fairly dark room lit by several candles standing on a small, low table. There were several men and a woman sitting in the room, talking to each other, but they all watched him as he entered the room. There were no drugs being used when he entered the room. Allen saw no crack pipes or other drug paraphernalia in the room.

A man, later identified as appellant, was standing next to the table and asked Allen what he wanted. Appellant told Allen to put his money on the table and pick one of the "pebble-like substances" from the five or six "pebbles" on the table. Allen came within one to two feet of appellant, and was able to clearly see his face for at least 30 seconds, even in the dark, poorly lit room. The man speaking wore a blue shirt and blue jeans.

Allen put the money, which was marked, on the table, picked up the "pebble-like substance," and left the house. He did not see appellant pick up the $20 bill. He went to his car and radioed the "raid team" to tell them of the purchase. He gave the raid team a description of the man that spoke to him as the man he made the purchase from.

The raid team entered the house within two to three minutes of Allen's departure. They located the only person present that matched the clothing description given by Allen, which turned out to be appellant, and took him outside. No one else in the house was arrested. No drugs were found, other than those Allen bought, and the marked $20 was not found. There were no bills, leases, receipts, or anything else found to connect appellant with the residence.

After signalling Allen on the radio, the officers took appellant to the curb and shined a flashlight on his face. Allen drove by in an unmarked car and, over the radio, verified that appellant was the person he made the purchase from in the house. Appellant was arrested. The substance Allen obtained that night was positively identified as cocaine. Allen also positively identified appellant, in court, as the man that sold him the cocaine that night.

Appellant testified during the guilt-innocence phase. He denied being present in the living room when Officer Allen came into the house. He never saw anyone buy or sell drugs in the house that day.

Appellant was charged with delivery of less than 28 grams of a controlled substance, namely cocaine. The indictment set out, in pertinent part, that appellant, on or about April 28, 1990, did then and there unlawfully:

[I]ntentionally and knowingly deliver by actual transfer to L.J. ALLEN, a controlled substance, namely, COCAINE, weighing by aggregate weight, including adulterants and dilutants, less than 28 grams....

[I]ntentionally and knowingly deliver by constructive transfer to L.J. ALLEN....

[I]ntentionally and knowingly deliver by offering to sell to L.J. ALLEN....

After the presentation of all the evidence, the State abandoned, and asked for dismissal of, the third paragraph alleging transfer by sale. A general verdict was returned, finding the appellant guilty as charged in the indictment.

The charge to the jury defined "delivery" as:

[T]he actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. Constructive transfer is the transfer of a controlled substance either belonging to an individual or under his direct or indirect control by some other person at the instance or direction of the individual accused of such constructive transfer.

The charge went on to say:

Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 28th day of April, 1990, the defendant, Charles Sanders Wartel, did then and there unlawfully, intentionally or knowingly deliver by actual transfer to L.J. Allen, a controlled substance, namely, cocaine, weighing by aggregate weight, including adulterants or dilutants, less than 28 grams; or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 28th day of April, 1990, the defendant, Charles Sanders Wartel, did then and there unlawfully, intentionally or knowingly deliver by constructive transfer to L.J. Allen, a controlled substance, namely, cocaine, weighing by aggregate weight, including adulterants or dilutants, less than 28 grams, then you will find the defendant guilty as charged in the indictment.

Appellant asserts that the State never offered any proof that he actually or constructively delivered any drugs to anyone. Appellant concedes he was in the house at the time the event took place, but contends that talking to the officer, without more, constitutes mere presence, and not delivery. Appellant's theory at trial was that there were several other people in the house, some the same height as he (six feet), some the same height indicated in the police report (five feet, seven inches), and most were also wearing blue clothing the night of the drug bust. He asserts on appeal that there is no evidence showing that he had control, direct or indirect, over the cocaine prior to the alleged delivery.

Mere presence in the vicinity of a controlled substance is not sufficient to support a conviction. *Humason v. State*, 728 S.W.2d 363, 365 (Tex.Crim.App.1987). There must be some "affirmative link" from a defendant to the vendee to show delivery in some form. *Atuesta v. State*, 788 S.W.2d 72, 75 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). *Actual* delivery of a controlled substance consists of the complete transfer of real possession and control of the substance from one person to another. *Conaway v. State*, 738 S.W.2d 692, 695 (Tex.Crim.App.1987); *Coleman v. State*, 794 S.W.2d 926, 928 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

The evidence, viewed in the light most favorable to the verdict, established that appellant was present, the cocaine was in his plain view, he responded to Allen's request for drugs by directing him to the pebbles or "rocks" on the table, and he dictated the terms of the transaction, i.e.,

exchanging money for one of the rocks. Even though appellant did not pick up the rock and hand it to Officer Allen, appellant was in control of the transaction and effected an actual transfer of the rock to Allen.

We overrule point of error one.

■ In his second point of error, appellant asserts there was insufficient evidence to establish that he was the one who executed the delivery.

There was direct testimony from Allen that he clearly saw appellant's face, that appellant was the one who directed him to the table and told him to take the "pebble," that he saw what appellant was wearing and described it to the officers who were making the bust, and that he was able to positively identify appellant out in the street, four to five minutes later. There was direct testimony from other officers that appellant was the only one in the house that fit the description given to them by Allen. Appellant was also identified in court by Allen and the other officers.

The jury, as the trier of fact, is the sole judge of the credibility of witnesses. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The jury may believe or disbelieve all or any part of a witness's testimony. *Sharp,* 707 S.W.2d at 614; *Smith v. State,* 789 S.W.2d 419, 420 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd).

We find the evidence was sufficient to persuade a jury, beyond a reasonable doubt, that it was appellant who executed the delivery. We overrule point of error two.

■ In his third point of error, appellant asserts he was denied effective assistance of counsel at the guilt-innocence phase because his appointed attorney failed to object to the highly prejudicial final argument by the prosecutor.

■ The standard of review for effectiveness of counsel is gauged by the totality of the representation of the accused. *Ex parte Duffy,* 607 S.W.2d 507, 516 n. 17 (Tex.Crim.App.1980). The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Rather, the right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel. *Ex parte Cruz,* 739 S.W.2d 53, 57–58 (Tex.Crim.App. 1987). An isolated failure to object to certain procedural mistakes or improper evidence does not necessarily constitute ineffective assistance of counsel. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App. 1984). Neither is counsel rendered ineffective merely because counsel may have made a mistake during trial and other counsel might have tried the case differently. *Id.* Thus, to obtain a reversal because of ineffective assistance, appellant must show that: (1) counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The Supreme Court in *Strickland* stated:

> [W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.... The result of a proceeding can be rendered unreliable, and hence, the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.... In every case the court should be concerned with whether ... [t]he result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

466 U.S. at 693–96, 104 S.Ct. at 2067–69.

■ Appellant argues that his trial counsel should have objected to statements by the prosecutor that:

1) the job done by the police officers like Allen was a high risk job, unlike any other job, and the officers did the job because of their commitment to the community, not for promotions or money;

2) this was not a case of mistaken identity but of a man who had been caught red-handed; and

3) appellant took the case to trial to try and get a "sucker" who would believe his lies about "dirty, crooked cops" fabricating a case against him.

The Texas Court of Criminal Appeals has identified four areas of permissible jury argument: 1) summation of evidence; 2) reasonable deductions from the evidence; 3) response to defendant's argument; and 4) plea for law enforcement. *Gomez v. State,* 704 S.W.2d 770, 771 (Tex.Crim.App. 1985); *Sanders v. State,* 787 S.W.2d 435, 441 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). To determine the propriety of the prosecutor's argument, the entire argument is considered, not just isolated statements. *Mosley v. State,* 686 S.W.2d 180, 183 (Tex.Crim.App.1985).

The prosecutor's statements were clearly in response to arguments made by appellant. Appellant's counsel, in his closing argument, had argued that the officers who had testified were motivated by the desire to please their superiors, earn promotions, and justify the money spent by their department. The second statement appellant complains about was in response to appellant's defensive theory and argument about mistaken identity; it was a summation of the evidence from the State's perspective. The third statement was also in response to arguments raised by appellant's testimony and closing argument.

Because the arguments of the prosecutor were not improper, we hold appellant was not denied effective assistance of counsel by counsel's failure to object. We overrule point of error three.

We affirm the judgment.