COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-405-CR

 

 

ROY FREDRICK BROWN                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 367TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








A jury found Appellant Roy Fredrick Brown guilty
of felony assault family-violence, and the jury assessed his punishment at ten
years=
imprisonment and a $10,000 fine.  The
trial court sentenced him accordingly. 
Counsel on appeal has filed an Anders brief asserting that there
are no grounds that could be argued successfully on appeal.[2]  Because we hold that any appeal from this
case would be frivolous, we grant counsel=s motion
to withdraw and affirm the trial court=s
judgment.

II.  Factual and Procedural Background

Brown and Brandy York had a child together.  York and the child lived with York=s mother
in Carrollton, and Brown lived in The Colony. 
York was upset that Brown had not kept in contact with her, and she
drove to Brown=s house to confront him and to
return some of his belongings.  York and
Brown began arguing in front of Brown=s house
and continued to argue as they walked towards York=s car to
get Brown=s belongings out of the
trunk.  

Brown=s
neighbor, Nelly Hudson, was taking out her trash when she heard a yelling voice
and a whimpering.  Hudson saw Brown and
York in front of Brown=s house and heard York ask, A[P]lease,
please, don=t do this, please, please, let
me go, let me go.@ 
Hudson witnessed Brown repeatedly punch York and push her against the
car.  Hudson yelled to Brown, A[W]hat
in the hell are you doing there[?]@ to
which Brown responded that she should mind her own business and called her an Aold
bitch.@   








Sergeant Stella Green and Becky Watkins lived in
Brown=s
neighborhood and were walking their dogs when they heard screaming.  Sergeant Green saw Brown grab York, kick her,
put her in a headlock, punch her, and throw her against the car.  Sergeant Green knew that Officer Bill House
lived across the street, and she ran to Officer House=s
residence and told him what she had witnessed. 
Officer House grabbed his weapon and his badge and went outside. In the
meantime, Watkins, who was waiting outside with the dogs, saw York get into her
car and drive off and saw Brown go back into his house. 

Officer House followed York in his squad car,
turned on his lights, and initiated a stop. 
York was crying and upset, and she had redness around her eyes and
throat and a cut on the inside of her lower lip.  York explained to Officer House that Brown had
held her in a headlock and punched her in the face, giving her a busted lip,
that he punched her in the stomach, and that he yelled at the woman across the
street when she confronted him.  York
also told Officer House that Brown had pushed her against the trunk of the
car.   

Officer Jim Slack arrived shortly thereafter, and
York told him that Brown had assaulted her. 
When Officer Slack asked York if she would like to make a police report,
she said that she would.  She then went
to the police department to wait on one of the officers to return to interview
her, and Officers House and Slack returned to Brown=s
house.  








In the meantime, Officer Sophie Gracia had been
dispatched to Brown=s house.  Officer Gracia and Sergeant Green went into
Brown=s house
and asked him to come outside so they could question him.  Three other men and one woman were also in
Brown=s home,
and the officers asked them to go outside as well.  Everyone in Brown=s house
was unwilling to cooperate with the officers and would not provide witness
statements.[3]  Brown was very angry, and he repeatedly told
the officers that York had bitten him and that he was the victim.  At one point, Brown became so upset that he hit
a motorcycle in his garage, causing it to fall over.  The officers arrested Brown.   

Officer Gracia went to the police station to
interview York.  York wrote a statement,
and Officer Gracia took pictures of York=s
injuries.  The officer observed injuries
around York=s jaw, eyes, neck, and
arms.    








At trial, York testified on Brown=s
behalf.  She testified that she started
the fight by kicking Brown and attempting to pull out his nipple ring.  She testified that Brown only put her in a
headlock because he was defending himself and that, while she was in the
headlock, she bit him in the stomach. 
She testified that Brown never kicked her, punched her, or shoved her
against the car.  York testified that she
only told the officers that Brown had assaulted her because she was angry at
him.  

Brown testified that York came over to his house
and started arguing with him.  Brown
testified that after they walked to York=s car,
she hugged him and started crying and that he pushed her away and reached for
his bags.  Brown testified that after
York kicked him and tried to grab his nipple ring, he pulled her towards him to
subdue her.  He explained that York bit
him in his stomach and on his arm while he was holding her down.  Photographs of York=s
injuries and the bite marks on Brown=s
stomach and neck were introduced into evidence. 


A jury found Brown guilty of assault
family-violence and assessed his punishment at ten years=
confinement and a $10,000 fine.  Brown
perfected this appeal.

III.  The Anders Brief








Brown=s
court-appointed appellate counsel has filed a motion to withdraw.  In support of his motion, counsel has filed a
detailed brief in which he avers that, in his professional opinion, this appeal
is frivolous.  Counsel=s brief
and motion meet the requirements of Anders by presenting a professional
evaluation of the record demonstrating why there are no arguable grounds for
relief.  See Mays v. State, 904
S.W.2d 920, 922-23 (Tex. App.CFort
Worth 1995, no pet.).  Specifically, in
his brief, counsel raises several potential arguments on appeal but concludes
that none of the arguments would be meritorious.  We provided Brown with the opportunity to
file a pro se brief, but he did not do so.[4]

Once counsel fulfills the Anders
requirements, we must conduct an independent evaluation of the record to
determine whether counsel is correct in determining that the appeal is
frivolous.  See Stafford v. State,
813 S.W.2d 503, 511 (Tex. Crim. App. 1991); Mays, 904 S.W.2d at
923.  We have conducted an independent
review of the record and have determined just that.

IV.  Independent Review of the Record

A.  Pretrial








In the instant case, the indictment tracks the
statutory language for felony assault family-violence.  See Tex.
Penal Code Ann. ' 22.01(a)(1), (b)(2) (Vernon
Supp. 2005).  The indictment alleges that
the offense occurred before the presentment of the indictment.  See Tex.
Code Crim. Proc. Ann. art. 21.02 (Vernon 1989).  The indictment was not defective and it
conferred jurisdiction on the trial court and provided Brown with sufficient
notice to prepare a defense.  See  Tex.
Const. art. V, ' 12; Duron v. State, 956
S.W.2d 547, 550-51 (Tex. Crim. App. 1997). 

Prior to voir dire, the trial court heard the
parties= agreed
stipulation to Brown=s prior conviction for assault
family-violence, and Brown swore to the stipulation.  The court also heard the parties= only
pretrial motionCBrown=s motion
in limine.  The trial court granted the
motion in part without objection by the State, but the court denied the motion
with regard to prior hearsay statements made by York to other witnesses.  The trial judge's denial of this portion of
Brown=s motion
in limine was a preliminary ruling that preserved nothing for appellate
review.  See Geuder v. State, 115
S.W.3d 11, 14‑15 (Tex. Crim. App. 2003). 









During voir dire, the trial court permitted Brown
to ask proper questions of the panel, and the trial court did not permit the
State to ask any improper questions.  The
trial court granted all of Brown=s
challenges for cause.[5]  We have reviewed the entire voir dire, and
nothing in the record before us would support a claim of ineffective assistance
of counsel during voir dire.  See
Wright v. State, 768 S.W.2d 391, 393 (Tex. App.CEl Paso
1989, no pet.).  

B. 
Guilt-Innocence Phase

We next examine the guilt-innocence phase of
Brown=s trial
to determine what error, if any, was preserved and whether any such error was
harmful.  Brown asserted three objections
to the prosecutor=s opening statement, and the
trial court sustained all of them.  Brown
did not ask for an instruction to disregard the improper comments, nor did he
move for a mistrial.  Thus, Brown
obtained all the relief he requested; he was required to obtain an adverse
ruling to preserve the matter for review.  See Tex.
R. App. P. 33.1; Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim.
App. 1993). 








During the State=s
case-in-chief, Hudson testified that she heard York ask, A[P]lease,
please, don=t do this, please, please, let
me go, let me go.@ 
Brown objected that this testimony was inadmissible hearsay, and the
trial court overruled his objection. 
Brown later objected to Officer House=s
testimony about what York told him about the incident, and the trial court
overruled that objection as well.  The
trial court then granted Brown=s
request for a running objection to any statements made by York to any police
officers.[6]  The trial court did not abuse its discretion
by overruling Brown=s hearsay objections because
York=s out‑of‑court
statements fell within the excited utterance exception to the hearsay
rule.  See Tex. R. Evid. 803(2); Marc v. State, 166 S.W.3d 767,
780 (Tex. App.CFort Worth 2005, pet. ref=d); see
also Zuliani v. State, 97 S.W.3d 589, 595-96 (Tex. Crim. App. 2003)
(holding that an abuse of discretion standard applies to the determination of
whether the trial court properly admitted a statement as a hearsay
exception).  The officers testified that
York made these statements shortly after the incident occurred and that she was
extremely upset and crying when she made the statements.  See
Marc, 166 S.W.3d at 780.

Brown also objected to the admission of York=s
out-of-court statements to the police officers as a violation of his Sixth
Amendment right to confrontation because York was available to testify.  See U.S.
Const amend. VI; Crawford v. Washington, 541 U.S. 36, 42, 124 S.
Ct. 1354, 1359 (2004).  We review de novo
the trial court's ruling that the admission of York=s
out-of-court statements would not violate Brown=s
Confrontation Clause rights.  See
Lilly v. Virginia, 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999); Marc,
166 S.W.3d at 778.  








In Crawford v. Washington, the Supreme
Court held that the Confrontation Clause bars the admission of out‑of‑court
testimonial statements made by a witness who does not testify, unless the
witness is unavailable to testify and the defendant has had a prior opportunity
to cross‑examine the witness.  541
U.S. at 68, 124 S. Ct. at 1374. 
Therefore, to implicate the Confrontation Clause, an out‑of‑court
statement must be (1) made by an absent witness and (2) testimonial in
nature.  See id. at 68, 124 S. Ct.
at 1374.

In the present case, Brown called York to
testify, and he was able to confront York and to cross-examine her about the
inconsistencies in her statements.  See
Dettmer v. State, No. 05-02-01616-CR, 2004 WL 64693, at *4 (Tex. App.CDallas
Jan. 15, 2004, pet. ref=d) (not designated for
publication).  Thus, Brown=s Sixth
Amendment rights were not violated, or even implicated, in this case.  








After both sides rested, Brown presented the
trial court with several requested instructions to be included in the court=s
charge.  Per Brown=s
request, the trial court included in its charge an instruction on self-defense
and a limiting instruction that Brown=s prior
convictions could be used only for impeachment purposes.[7]  The trial court properly refused to include
in its charge Brown=s proposed instruction that York=s
hearsay statements could be considered for impeachment purposes only.  See Richardson v. State, 786 S.W.2d
335, 337 (Tex. Crim. App. 1990) (holding that no limiting charge is necessary
when evidence is admissible for all purposes). 
At Brown=s request, however, the court
did include an instruction that the jury could consider York=s prior
inconsistent statements to the victim assistance coordinator for impeachment
purposes only.  

Our review of the charge demonstrates that it
misstated the law on assault family-violence, but Brown did not object at
trial.  The charge stated, 

[A] person commits a felony
assault if the person intentionally or knowingly causes bodily injury to
another, including the person=s spouse
and who has previously been convicted one or more times of committing
an assault against a member of the defendant=s family
or household.  [Emphasis added.] 

This charge failed to include two elements of assault family-violence;
it omitted the term Arecklessly@ from
the requisite mens rea for assault causing bodily injury, and it omitted the
requirement that the current assault for which the defendant is on trial was
committed on a member of the defendant=s family
or household.  See Tex. Penal Code Ann. '
22.01(a)(1), (b)(2).  








Because Brown did not object at trial to this
error in the court=s charge, we must decide whether
the error was so egregious and created such harm that Brown did not have a fair
and impartial trialCin short, that Aegregious
harm@ has
occurred.  See Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g);
see also Tex. Code Crim. Proc. Ann.
art. 36.19 (Vernon 1981); Hutch v. State, 922 S.W.2d 166, 171 (Tex.
Crim. App. 1996).  In making this determination,
Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@  Almanza, 686 S.W.2d at 171; see
generally Hutch, 922 S.W.2d at 172-74. 
The purpose of this review is to illuminate the actual, not just
theoretical, harm to the accused.  Almanza,
686 S.W.2d at 174.  Egregious harm is a
difficult standard to prove and must be determined on a case-by-case
basis.  Ellison v. State, 86
S.W.3d 226, 227 (Tex. Crim. App. 2002); Hutch, 922 S.W.2d at 171.








The trial court is obligated to charge the jury
on the Alaw
applicable to the case.@  Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2005).  This
requires that the jury be instructed concerning each element of the
offense or offenses charged.  Murphy
v. State, 44 S.W.3d 656, 661 (Tex. App.CAustin
2001, no pet.).  A person commits assault
family-violence if the person intentionally, knowingly, or recklessly causes
bodily injury to

a person whose
relationship or association with the defendant is described by Section
71.0021(b), 71.003, or 71.005, Family Code, if it is shown on the trial of
the offense that the defendant has been previously convicted of an offense
under this chapter, Chapter 19, or Section 20.03, 20.04, or 21.11 against a
person whose relationship to or association with the defendant is described by
Section 71.0021(b), 71.003, or 71.005, Family Code.  

 

Tex. Penal Code Ann. '
22.01(a)(1), (b)(2) (emphasis added).  

In the present case, although the abstract
paragraph on assault family-violence failed to accurately state the elements of
the offense, the application paragraph properly applied the law on assault
family-violence to the facts.  See id.  It read,                  

 

Now if you find from the
evidence beyond a reasonable doubt that on or about the 2nd day of February ,
2003 in Denton County, Texas the defendant, ROY FREDRICK BROWN, did then and
there intentionally, knowingly, or recklessly cause bodily injury to
Brandy York, a member of the defendant=s family or household by striking or pushing
Brandy York with the defendant=s hand , as alleged in the indictment, and if you
further find from the evidence beyond a reasonable doubt that the defendant,
previously thereto, had been convicted of the offense of assault against a
member of the defendant=s family or household
under Section 22.01, Penal Code, in that on the 30th day of March, 2000, in
cause number CR-99-05713-A, styled AThe State of Texas vs. ROY FREDRICK BROWN@ on the docket of the
County Criminal Court No. 1 of Denton County, Texas, you will find the
defendant guilty of Assault (Felony), as charged in the indictment.  [Emphasis added.].

 








Because the application paragraph correctly instructed the jury, any
error in the abstract portion of the charge cannot be egregious.  See Medina v. State, 7 S.W.3d 633, 640
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102 (2000).  After reviewing the record as a whole, we
cannot conclude that the trial court's error in misstating the law on assault
family-violence in the abstract portion of its charge caused Brown egregious
harm.  See Almanza, 686 S.W.2d at
171; see also Tex. Code Crim.
Proc. Ann. art. 36.19; Hutch, 922 S.W.2d at 171.    During the State=s
closing argument, Brown raised three objections to the prosecutor=s
characterization of the evidence.  The
trial court properly overruled Brown=s
objections; the prosecutor=s
statements were reasonable deductions from the evidence, responses to Brown=s
arguments, and a plea for law enforcement. 
See Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); Jones
v. State, 119 S.W.3d 412, 428 (Tex. App.CFort
Worth 2003, no pet.); Wartel v. State, 830 S.W.2d 757, 762 (Tex. App.CHouston
[1st Dist.] 1992, no pet.). 
Additionally, after Brown=s third
objection, the trial court instructed the jury to follow the court=s
charge, not the attorney=s statements if they varied from
the charge.    








After reviewing the record and applying the
appropriate standards of review, we conclude that the evidence is both legally
and factually sufficient to support Brown=s
conviction for assault family-violence.  See
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton
v. State, 165 S.W.3d 691, 693-94 (Tex. Crim. App. 2005) (both giving legal
sufficiency standard); see also Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004); Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997) (both giving a factual sufficiency standard).  Based on the testimony and evidence presented
at trial, the jury could have reasonably found the essential elements of the
offense beyond a reasonable doubt.[8]  See
Tex. Penal Code Ann. '
22.01(a)(1), (b)(2). 








Finally, Brown=s
counsel at trial effectively cross-examined the State=s
witnesses and attempted to establish that Brown acted in self-defense by
calling both York and Brown to testify that York started the fight and that
Brown only acted as he did in order to protect himself.  Counsel points out that although the
judgment from Brown=s prior assault conviction did
not contain a finding of family violence and that, standing alone, it would not
have conferred jurisdiction, it was sound trial strategy to stipulate to the
prior conviction.  If Brown had not
agreed to stipulate to his prior assault family-violence conviction, the State
could have introduced extrinsic evidence to prove that Brown=s
previous assault was against a family member. 
See Goodwin v. State, 91 S.W.3d 912, 919 (Tex. App.CFort
Worth 2002, no pet.).  Thus, counsel=s
performance at the guilt-innocence phase of trial was constitutionally
sufficient.  See Strickland v.
Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  Consequently, after reviewing the record, we
have found no reversible error during the guilt-innocence phase of Brown=s trial.

C. 
Punishment

Before the punishment phase of trial, Brown=s trial
counsel informed the trial court that Brown agreed that he would not object to
the State=s introduction of evidence of
his prior unadjudicated drug possession offense in exchange for a plea offer
regarding that offense.  The State also
introduced the judgments from Brown=s prior
convictions for unauthorized use of a vehicle, burglary of a motor vehicle,
delivery of marijuana, assault, resisting arrest or search, and failure to
identify.  Brown stipulated to these
prior offenses.  The trial court accepted
Brown=s
stipulation, and the trial court admitted certified copies of the judgments in
all of the prior convictions.   








After a finding of guilt, evidence may be offered
by the State as to any matter the court deems relevant to sentencing, including
the prior criminal record of the defendant. 
Tex. Code Crim. Proc. Ann.
art. 37.07, ' 3(a)(1) (Vernon Supp.
2005).  The record reveals that, prior to
trial and in accordance with his request, Brown received notice of the State=s intent
to introduce evidence of Brown=s prior
convictions.  See id. '
3(g).  Thus, the trial court did not
abuse its discretion by admitting evidence of Brown=s prior
convictions.      Neither party objected
to the trial court=s charge on punishment nor
suggested adding any specially requested instructions, definitions, or
questions. The court=s charge on punishment properly
instructed the jury on the applicable range of punishment.  See Tex.
Penal Code Ann. ' 12.34 (Vernon 2003).        Brown=s
ten-year sentence and $10,000 fine are within the statutory range for a
third-degree felony.  See id.  Moreover, the judgment does not contain any
improper assessment of fees.  See Bray
v. State, 179 S.W.3d 725, 730 (Tex. App.CFort
Worth 2005, no pet.) (reforming judgment in Anders case in which
judgment incorrectly included payment of attorney=s fees
as condition of parole).  Thus, our
review of the record reveals no reversible error from the punishment phase.

 

 








V.  Conclusion

Based on our independent review of the record in
this case, we have determined that there is no error on which an appeal could
be based or which would require reversal. 
Therefore, because we agree with counsel=s
professional determination that an appeal in the instant case is frivolous, we
grant counsel=s motion to withdraw and affirm
the trial court=s judgment.

 

 

PER
CURIAM

 

PANEL F:    WALKER, J.; CAYCE, C.J.; and MCCOY, J.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: February 23,
2006

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











[1]See Tex. R. App. P. 47.4.





[2]See Anders v. California, 386
U.S. 738, 87 S. Ct. 1396 (1967).





[3]However, James Wesley
Russell, who was at Brown=s house that day,
testified that he tried to explain to the officers what he had seen but that
the officers told him to Ashut [his] mouth.@  He testified that the officers did not offer
to let him write a statement.   

 





[4]We sent Brown a letter
asking him to inform this court if he desired to examine the record and file a
pro se brief.  He informed this court by
letter that he wanted to file a pro se brief and raised several arguments in
his letter regarding errors in his conviction. 
However, Brown failed to file a brief. 
Because the arguments in his letter are inadequately briefed, we cannot
address them.  See Tex. R. App. P. 38.1 (listing the
requisites of an appellant=s brief). 





[5]Although we are not
required to consider the arguments Brown raised in his letter to this court, we
note that there is nothing in the record to support Brown=s contention that one
juror knew Brown and that another juror knew York, the alleged victim.  See Tex.
R. App. P. 38.1, 38.9.





[6]After the trial court
granted Brown a running objection to York=s out-of-court statements to any police officers,
Officer Slack testified that shortly after the incident, he arrived at the
scene and York explained to him that Brown had put her in a headlock and struck
her several times in the face and stomach.





[7]But the trial court and
Brown=s defense counsel agreed
to include in the prior bad acts paragraph of the charge an instruction that
the jury could consider Brown=s prior conviction for assault family-violence as
proof of the jurisdictional element of the offense.    





[8]Counsel points out that
there was no evidence to contradict Brown=s claim of self-defense and that, therefore, the
evidence could be factually insufficient to support Brown=s conviction.  However, there are two ways evidence may be
factually insufficient:  (1) when the
evidence supporting the verdict or judgment, considered by itself, is too weak
to support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. 
Zuniga, 144 S.W.3d at 484-85. 
A rational jury could conclude that the contrary evidence that Brown was
acting in self-defense was not so strong that his guilt could not be proven
beyond a reasonable doubt.  See id.