Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



ARRAN DESHUN JOHNSON,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00017-CR

Appeal from the

363rd District Court

of Dallas County, Texas

(TC# F-0356171-JW)




O P I N I O N

            This is an appeal from a jury conviction for the offense of delivery of cocaine in an
amount of four grams or more but less than two hundred grams--enhanced by the allegation of
two prior felony convictions. The jury found the enhancement allegations to be true and assessed
punishment at forty-five years’ imprisonment. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
            Mark Underwood, a police officer assigned to the narcotics division of the Dallas Police
Department, testified that on October 3, 2003, he was riding with Officers Starr and Castillo who
were members of his squad. Officer Underwood testified that he received a call from a
confidential informant named Nick Desimone that he was with an individual who could sell the
officer two ounces of cocaine. Officer Underwood drove an unmarked police car to a meeting
with Desimone. Upon arrival, he got into the backseat of Desimone’s car. Desimone was in the
driver’s seat and Appellant was in the front passenger’s seat.
            Appellant wanted to see the money. Officer Underwood counted out $1,600 and showed
it to Appellant. Appellant called someone and asked for two ounces of cocaine. Appellant stated
to Officer Underwood that they had to go to Oak Cliff to get the drugs. They haggled over the
location where to pick up the drugs. Officer Underwood did not want to go to Oak Cliff so they
eventually agreed to go to a dope house on Terrell Street in South Dallas. Officer Underwood
got back into his car and followed Desimone and Appellant to the parking lot of a hamburger
restaurant at the corner of Dolphin Road and Terrell Street. Officer Underwood got back in
Desimone’s car in the front passenger’s seat.
            Appellant came back to the parking lot with an individual named Derek Franklin. Officer
Underwood stated that Franklin waited on the corner and “kept an eye out.” He was looking
around. Appellant got into the car and asked Officer Underwood for the money. Officer
Underwood stated that he wanted to see the drugs first. Appellant reached down in the front of
his pants and pulled out a bag of cocaine. Upon seeing the cocaine, Officer Underwood sent a
signal to Officer Starr and the surveillance team by running his hand through his hair. Officer
Underwood then gave Appellant $1,600 in exchange for the cocaine.
            Marked police cars pulled up behind Desimone’s car. Appellant saw the approaching
police officers and he jumped out of the car and he threw the money into the air. He yelled that
Officer Underwood had cocaine. Two patrol officers arrested Appellant. Franklin was also
arrested.
            Appellant testified on his own behalf that he was an automobile mechanic and he helped
repair vehicles to be sold at auctions. Appellant stated that the only reason he was with
Desimone on October 3, 2003 was because he was interested in buying his car and Desimone
stated he would sell his car. While they were riding around in the car, Desimone kept asking
where they could buy drugs. Appellant testified that he told Desimone that he did not sell drugs
anymore. He told Desimone that he had prior drug convictions and did not want to get any new
charges. However, he did tell Desimone where they could buy some marijuana, and he bought
Desimone some marijuana.
            Appellant testified that Desimone took him to a drug dealer where Appellant bought
some more marijuana. When he got back to Desimone’s car, Officer Underwood was sitting in
the backseat holding some money. Appellant then went to Derek Franklin’s house where he
bought more marijuana. When he got back into Desimone’s car, Officer Underwood was
smoking crack cocaine and then Desimone took the officer’s money and threw it at Appellant. 
Appellant stated that he did not know why Desimone gave him the money or what was
happening and he became scared. Appellant stated that he got out of the car and threw the money
in the air. He lay down on the ground. When the backup officers arrived, Appellant told them
that the others in the car were smoking crack cocaine. Appellant stated that the cocaine belonged
to Franklin.
II. DISCUSSION
            In Issue No. One, Appellant contends that the court abused its discretion in overruling his
motion for new trial for jury misconduct during the punishment stage of trial. During the course
of deliberations at the punishment stage of trial, the presiding juror, Paul Kvernes, sent a note to
the court. In this note, it was stated that juror Justin Alexander had discovered that Derek
Franklin had “received a minimum sentence with regard to the case that we have deliberated. . . .
he found it on the BA54 computer system.” The court questioned Alexander and he testified that
he had worked for twenty years in the prison system, and he felt that many criminals did not get
the sentence that they deserved. He stated that the comment to the other jurors was an emotional
outburst of his general discontent with criminal sentencing, and he had apologized to the others
for making the statement. He testified that he would be able to set aside his knowledge of
Franklin’s sentence and fairly deliberate Appellant’s punishment. The court instructed
Alexander not to consider Franklin’s sentence during deliberation.
            The court questioned Paul Kvernes, and he testified that Alexander reached a point of
frustration during deliberations and he stated that Franklin had received a minimum sentence. 
Kvernes stated that Alexander did not say what exact sentence Franklin had received, but
Alexander was upset by the sentence. Kvernes stated that he would disregard the comment and
deliberate fairly. The court then instructed Kvernes not to consider the outburst during
deliberation. The court questioned the remaining ten jurors and they all responded that they
would disregard Alexander’s comment. The court instructed each juror not to consider the
comment during deliberations.
            Appellant moved for a mistrial on the ground that juror misconduct had occurred in that
Alexander had obtained outside information and had imparted it to the rest of the jury. The court
denied the motion. Appellant filed a general motion for new trial but he did not raise the issue of
jury misconduct. The motion for new trial was overruled. On appeal, Appellant argues that the
jury received outside evidence the effect of which could not be erased or disregarded in the
minds of the jurors.
            We review a trial court’s decision to deny a mistrial under an abuse of discretion
standard. Wead v. State, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004); see Russeau v. State, 171
S.W.3d 871, 885 (Tex.Crim.App. 2005). We must uphold the trial court’s ruling if that ruling
was within the zone of reasonable disagreement. Wead, 129 S.W.3d at 129; Montgomery v.
State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh’g). “Only in extreme
circumstances, where the prejudice is incurable, will a mistrial be required.” Hawkins v. State,
135 S.W.3d 72, 77 (Tex.Crim.App. 2004). Mistrial is an extreme remedy for prejudicial events
occurring during the trial process. See Bauder v. State, 921 S.W.2d 696, 698 (Tex.Crim.App.
1996). Declaring a mistrial should be an exceedingly uncommon remedy for residual prejudice
remaining after objections are made and curative instructions are given. Id. Accordingly,
judicial admonishments to the jury are presumed effective. Id.
            To constitute juror misconduct, the conduct must have come from an outside influence
which was improperly brought to bear upon any juror. State v. Ordonez, 156 S.W.3d 850, 852
(Tex.App.--El Paso 2005, pet. filed). These outside influences must originate from sources other
than the jury itself. See Garza v. State, 82 S.W.3d 791, 794 (Tex.App.--Corpus Christi 2002, no
pet.). Information gathered by a juror that is shared with the other jurors does not constitute
outside influence, even if it is shared specifically to influence the other jurors’ votes. Id.; Hines
v. State, 3 S.W.3d 618, 623 (Tex.App.--Texarkana 1999, pet. ref’d). Accordingly, Alexander’s
comment did not constitute the type of outside evidence needed to constitute jury misconduct.
            Furthermore, every juror testified that he or she would not be influenced by the statement
and each juror was instructed not to consider the statement. The jurors are presumed to have
abided by the court’s instructions. See Bauder, 921 S.W.2d at 698. Issue No. One is overruled.
            In Issue Nos. Two and Three, Appellant contends that the evidence is legally and
factually insufficient to support the conviction. In reviewing the legal sufficiency of the
evidence, we are constrained to view the evidence in the light most favorable to the judgment to
determine whether any rational trier of fact could find the essential elements of the offense, as
alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Butler v. State, 769
S.W.2d 234, 239 (Tex.Crim.App. 1989); Humason v. State, 728 S.W.2d 363, 366
(Tex.Crim.App. 1987). More particularly, sufficiency of the evidence should be measured by the
elements of the offense as defined by the hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997).
            Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex.Crim.App. 1989), cert. denied, 498 U.S. 951, 111
S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex.App.--El Paso
1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or evaluate the
credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given
great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex.App.--El Paso 1995, pet.
ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819
S.W.2d 839, 843 (Tex.Crim.App. 1991); Leyva v. State, 840 S.W.2d 757, 759 (Tex.App.--El
Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.App.--El Paso 1992, no pet.). 
Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact
are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. 
Adelman, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in
favor of the verdict. Matson, 819 S.W.2d at 843, quoting Moreno v. State, 755 S.W.2d 866, 867
(Tex.Crim.App. 1988). The trier of fact, not the appellate court, is free to accept or reject all or
any portion of any witness’s testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex.App.--El
Paso 1995, pet. ref’d).
            In conducting a factual sufficiency review, we view the evidence in a neutral light to
determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. We
set aside the fact finder’s verdict only if (1) the evidence supporting the verdict, when considered
by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) evidence
contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not
have been met. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex.Crim.App. 2004). However, our
factual sufficiency review must be appropriately deferential so as to avoid substituting our
judgment for that of the fact finder. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996). Accordingly, we are authorized to set aside the jury’s finding of fact only in instances
where it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. Id. at 135. If
the evidence is factually insufficient, we remand to the trial court for a new trial. Id. at 133-35.
            With regard to the legal sufficiency of the evidence, the elements of delivery of a
controlled substance are: (1) a person, (2) knowingly, (3) delivers, (4) a controlled substance. 
Tex. Health & Safety Code Ann. § 481.112(a) (Vernon 2003); see Lopez v. State, 108
S.W.3d 293, 297 (Tex.Crim.App. 2003). A delivery may be effectuated through actual transfer
or constructive transfer. See Tex. Health & Safety Code Ann. § 481.002(8) (Vernon Supp.
2006).
            An actual transfer “contemplates the manual transfer of property from the transferor to
the transferee or to the transferee’s agents or to someone identified in law with the transferee.”
Heberling v. State, 834 S.W.2d 350, 354 (Tex.Crim.App. 1992); Accord Donley v. State, 140
S.W.3d 428, 429 (Tex.App.--Beaumont 2004, no pet.) (stating that an actual transfer “consists of
a complete transfer of real possession and control of the contraband”). Implicit within this
definition is the need for the transferor to exercise both possession and control over the substance
delivered. Heberling, 834 S.W.2d at 354.
            Viewing the evidence here in the light most favorable to the verdict, Officer
Underwood’s testimony is in and of itself sufficient to support the conviction. He stated that
Appellant pulled a bag of cocaine out of his pants. He then gave the cocaine to the officer in
exchange for $1,600. The evidence is legally sufficient to support the conviction. See Wartel v.
State, 830 S.W.2d 757, 761 (Tex.App.--Houston [1st Dist.] 1992, no pet.).
            Regarding the factual sufficiency of the evidence, Appellant primarily contends that
Officer Underwood’s testimony is not credible in light of Appellant’s testimony. However, we
do not find that the evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Resolving the conflicts in the
testimony was the duty of the jury and the officer’s testimony is consistent and cogent. The jury
could well have disbelieved Appellant’s rendition of events and we do not perceive that the
conviction was manifestly unjust. Issue Nos. Two and Three are overruled.
            Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.

                                                                        DAVID WELLINGTON CHEW, Justice

October 5, 2006

Before Barajas, C.J., McClure, and Chew, JJ.
Barajas, C.J., not participating

(Do Not Publish)