Roy Fredrick Brown v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-405-CR

ROY FREDRICK BROWN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury found Appellant Roy Fredrick Brown guilty of felony assault family-violence, and the jury assessed his punishment at ten years’ imprisonment and a $10,000 fine.  The trial court sentenced him accordingly.  Counsel on appeal has filed an 
Anders
 brief asserting that there are no grounds that could be argued successfully on appeal.
(footnote: 2)  Because we hold that any appeal from this case would be frivolous, we grant counsel’s motion to withdraw and affirm the trial court’s judgment.

II.  Factual and Procedural Background

Brown and Brandy York had a child together.  York and the child lived with York’s mother in Carrollton, and Brown lived in The Colony.  York was upset that Brown had not kept in contact with her, and she drove to Brown’s house to confront him and to return some of his belongings.  York and Brown began arguing in front of Brown’s house and continued to argue as they walked towards York’s car to get Brown’s belongings out of the trunk.  

Brown’s neighbor, Nelly Hudson, was taking out her trash when she heard a yelling voice and a whimpering.  Hudson saw Brown and York in front of Brown’s house and heard York ask, “[P]lease, please, don’t do this, please, please, let me go, let me go.”  Hudson witnessed Brown repeatedly punch York and push her against the car.  Hudson yelled to Brown, “[W]hat in the hell are you doing there[?]” to which Brown responded that she should mind her own business and called her an “old bitch.”   

Sergeant Stella Green and Becky Watkins lived in Brown’s neighborhood and were walking their dogs when they heard screaming.  Sergeant Green saw Brown grab York, kick her, put her in a headlock, punch her, and throw her against the car.  Sergeant Green knew that Officer Bill House lived across the street, and she ran to Officer House’s residence and told him what she had witnessed.  Officer House grabbed his weapon and his badge and went outside. In the meantime, Watkins, who was waiting outside with the dogs, saw York get into her car and drive off and saw Brown go back into his house. 

Officer House followed York in his squad car, turned on his lights, and initiated a stop.  York was crying and upset, and she had redness around her eyes and throat and a cut on the inside of her lower lip.  York explained to Officer House that Brown had held her in a headlock and punched her in the face, giving her a busted lip, that he punched her in the stomach, and that he yelled at the woman across the street when she confronted him.  York also told Officer House that Brown had pushed her against the trunk of the car.   

Officer Jim Slack arrived shortly thereafter, and York told him that Brown had assaulted her.  When Officer Slack asked York if she would like to make a police report, she said that she would.  She then went to the police department to wait on one of the officers to return to interview her, and Officers House and Slack returned to Brown’s house.  

In the meantime, Officer Sophie Gracia had been dispatched to Brown’s house.  Officer Gracia and Sergeant Green went into Brown’s house and asked him to come outside so they could question him.  Three other men and one woman were also in Brown’s home, and the officers asked them to go outside as well.  Everyone in Brown’s house was unwilling to cooperate with the officers and would not provide witness statements.
(footnote: 3)  Brown was very angry, and he repeatedly told the officers that York had bitten him and that he was the victim.  At one point, Brown became so upset that he hit a motorcycle in his garage, causing it to fall over.  The officers arrested Brown.   

Officer Gracia went to the police station to interview York.  York wrote a statement, and Officer Gracia took pictures of York’s injuries.  The officer observed injuries around York’s jaw, eyes, neck, and arms.    

At trial, York testified on Brown’s behalf.  She testified that she started the fight by kicking Brown and attempting to pull out his nipple ring.  She testified that Brown only put her in a headlock because he was defending himself and that, while she was in the headlock, she bit him in the stomach.  She testified that Brown never kicked her, punched her, or shoved her against the car.  York testified that she only told the officers that Brown had assaulted her because she was angry at him.  

Brown testified that York came over to his house and started arguing with him.  Brown testified that after they walked to York’s car, she hugged him and started crying and that he pushed her away and reached for his bags.  Brown testified that after York kicked him and tried to grab his nipple ring, he pulled her towards him to subdue her.  He explained that York bit him in his stomach and on his arm while he was holding her down.  Photographs of York’s injuries and the bite marks on Brown’s stomach and neck were introduced into evidence.  

A jury found Brown guilty of assault family-violence and assessed his punishment at ten years’ confinement and a $10,000 fine.  Brown perfected this appeal.

III.  The 
Anders
 Brief

Brown’s court-appointed appellate counsel has filed a motion to withdraw.  In support of his motion, counsel has filed a detailed brief in which he avers that, in his professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders
 by presenting a professional evaluation of the record demonstrating why there are no arguable grounds for relief.
  See Mays v. State
, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).  Specifically, in his brief, counsel raises several potential arguments on appeal but concludes that none of the arguments would be meritorious.  We provided Brown with the opportunity to file a 
pro se
 brief, but he did not do so.
(footnote: 4)
 Once counsel fulfills the 
Anders
 requirements, we must conduct an independent evaluation of the record to determine whether counsel is correct in determining that the appeal is frivolous.  
See Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); 
Mays
, 904 S.W.2d at 923.  We have conducted an independent review of the record and have determined just that.

IV.  Independent Review of the Record

A.  Pretrial

In the instant case, the indictment tracks the statutory language for felony assault family-violence.  
See 
Tex. Penal Code Ann. 
§ 22.01(a)(1), (b)(2) (Vernon Supp. 2005).  The indictment alleges that the offense occurred before the presentment of the indictment.  
See 
Tex. Code Crim. Proc. Ann.
 art. 21.02 (Vernon 1989).  The indictment was not defective and it conferred jurisdiction on the trial court and provided Brown with sufficient notice to prepare a defense.  
See
 
 Tex. Const. 
art. V, § 12; 
Duron v. State
, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997). 

Prior to voir dire, the trial court heard the parties’ agreed stipulation to Brown’s prior conviction for assault family-violence, and Brown swore to the stipulation.  The court also heard the parties’ only pretrial motion—Brown’s motion in limine.  The trial court granted the motion in part without objection by the State, but the court denied the motion with regard to prior hearsay statements made by York to other witnesses.  The trial judge's denial of this portion of Brown’s motion in limine was a preliminary ruling that preserved nothing for appellate review.  
See Geuder v. State
, 115 S.W.3d 11, 14-15 (Tex. Crim. App. 2003).  

During voir dire, the trial court permitted Brown to ask proper questions of the panel, and the trial court did not permit the State to ask any improper questions.  The trial court granted all of Brown’s challenges for cause.
(footnote: 5)  We have reviewed the entire voir dire, and nothing in the record before us would support a claim of ineffective assistance of counsel during voir dire.  
See Wright v. State
, 768 S.W.2d 391, 393 (Tex. App.—El Paso 1989, no pet.).  

B.  Guilt-Innocence Phase

We next examine the guilt-innocence phase of Brown’s trial to determine what error, if any, was preserved and whether any such error was harmful.  Brown asserted three objections to the prosecutor’s opening statement, and the trial court sustained all of them.  Brown did not ask for an instruction to disregard the improper comments, nor did he move for a mistrial.  Thus, Brown obtained all the relief he requested; he was required to obtain an adverse ruling to preserve the matter for review. 
 See 
Tex. R. App. P. 
33.1; 
Cook v. State, 
858 S.W.2d 467, 473 (Tex. Crim. App. 1993). 

During the State’s case-in-chief, Hudson testified that she heard York ask, “[P]lease, please, don’t do this, please, please, let me go, let me go.”  Brown objected that this testimony was inadmissible hearsay, and the trial court overruled his objection.  Brown later objected to Officer House’s testimony about what York told him about the incident, and the trial court overruled that objection as well.  The trial court then granted Brown’s request for a running objection to any statements made by York to any police officers.
(footnote: 6)  The trial court did not abuse its discretion by overruling Brown’s hearsay objections because York’s out-of-court statements fell within the excited utterance exception to the hearsay rule.  
See
 Tex. R. Evid.
 803(2); 
Marc v. State
, 166 S.W.3d 767, 780 (Tex. App.—Fort Worth 2005, pet. ref’d); 
see also Zuliani v. State
, 97 S.W.3d 589, 595-96 (Tex. Crim. App. 2003) (holding that an abuse of discretion standard applies to the determination of whether the trial court properly admitted a statement as a hearsay exception).  The officers testified that York made these statements shortly after the incident occurred and that she was extremely upset and crying when she made the statements.  
See
 
Marc
, 166 S.W.3d at 780.

Brown also objected to the admission of York’s out-of-court statements to the police officers as a violation of his Sixth Amendment right to confrontation because York was available to testify.  
See 
U.S. Const
 amend. VI; 
Crawford v. Washington
, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004).  We review de novo the trial court's ruling that the admission of York’s out-of-court statements would not violate Brown’s Confrontation Clause rights
.  See Lilly v. Virginia
, 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999); 
Marc
, 166 S.W.3d at 778.  

In 
Crawford v. Washington
, the Supreme Court held that the Confrontation Clause bars the admission of out-of-court testimonial statements made by a witness who does not testify, unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness.  541 U.S. at 68, 124 S. Ct. at 1374.  Therefore, to implicate the Confrontation Clause, an out-of-court statement must be (1) made by an absent witness and (2) testimonial in nature.  
See id. 
at 68, 124 S. Ct. at 1374.

In the present case, Brown called York to testify, and he was able to confront York and to cross-examine her about the inconsistencies in her statements.  
See Dettmer v. State
, No. 05-02-01616-CR, 2004 WL 64693, at *4 (Tex. App.—Dallas Jan. 15, 2004, pet. ref’d) (not designated for publication).  Thus, Brown’s Sixth Amendment rights were not violated, or even implicated, in this case.  

After both sides rested, Brown presented the trial court with several requested instructions to be included in the court’s charge.  Per Brown’s request, the trial court included in its charge an instruction on self-defense and a limiting instruction that Brown’s prior convictions could be used only for impeachment purposes.
(footnote: 7)  The trial court properly refused to include in its charge Brown’s proposed instruction that York’s hearsay statements could be considered for impeachment purposes only.  
See Richardson v. State
, 786 S.W.2d 335, 337 (Tex. Crim. App. 1990) (holding that no limiting charge is necessary when evidence is admissible for all purposes).  At Brown’s request, however, the court did include an instruction that the jury could consider York’s prior inconsistent statements to the victim assistance coordinator for impeachment purposes only.  

Our review of the charge demonstrates that it misstated the law on assault family-violence, but Brown did not object at trial.  The charge stated, 

[A] person commits a felony assault if the person 
intentionally or knowingly 
causes bodily injury 
to another, including the person’s spouse 
and who has previously been convicted one or more times of committing an assault against a member of the defendant’s family or household.  [Emphasis added.] 

This charge failed to include two elements of assault family-violence; it omitted the term “recklessly” from the requisite mens rea for assault causing bodily injury, and it omitted the requirement that the current assault for which the defendant is on trial was committed on a member of the defendant’s family or household.  
See
 
Tex. Penal Code Ann. 
§ 22.01(a)(1), (b)(2).  

Because Brown did not object at trial to this error in the court’s charge, we must decide whether the error was so egregious and created such harm that Brown did not have a fair and impartial trial—in short, that “egregious harm” has occurred. 
 See Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g);
 see also 
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
Hutch v. State
, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Almanza
, 686 S.W.2d at 171; 
see generally Hutch
, 922 S.W.2d at 172-74.  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.  
Almanza
, 686 S.W.2d at 174.  Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.  
Ellison v. State
, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); 
Hutch
, 922 S.W.2d at 171.

The trial court is obligated to charge the jury on the “law applicable to the case.”
  Tex. Code Crim. Proc.
 
Ann. 
art.
 36.14 (
Vernon Supp. 2005
).  
This
 
requires that the jury be instructed concerning each element of the offense or offenses charged.  
Murphy v. State
, 44 S.W.3d 656, 661 (Tex. App.—Austin 2001, no pet.).  A person commits assault family-violence if the person 
intentionally, knowingly, or recklessly 
causes bodily injury to

a
 person whose relationship or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, 
if it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, or 21.11 against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code.  

Tex. Penal Code Ann. 
§ 22.01(a)(1), (b)(2) (emphasis added).  

In the present case, although the abstract paragraph on assault family-violence failed to accurately state the elements of the offense, the application paragraph properly applied the law on assault family-violence to the facts.  
See id
.  It read, 

Now if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of February , 2003 in Denton County, Texas the defendant, ROY FREDRICK BROWN, did then and there 
intentionally, knowingly, or recklessly 
cause bodily injury to Brandy York
, a member of the defendant’s family or household
 by striking or pushing Brandy York with the defendant’s hand , as alleged in the indictment, and if you further find from the evidence beyond a reasonable doubt that the defendant, previously thereto, had been convicted of the offense of assault against a member of the defendant’s family or household under Section 22.01, Penal Code, in that on the 30th day of March, 2000, in cause number CR-99-05713-A, styled “The State of Texas vs. ROY FREDRICK BROWN” on the docket of the County Criminal Court No. 1 of Denton County, Texas, you will find the defendant guilty of Assault (Felony), as charged in the indictment.  [Emphasis added.].

Because the application paragraph correctly instructed the jury, any error in the abstract portion of the charge cannot be egregious.  
See Medina v. State
, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1102 (2000).  After reviewing the record as a whole, we cannot conclude that the trial court's error in misstating the law on assault family-violence in the abstract portion of its charge caused Brown egregious harm.  
See Almanza
, 686 S.W.2d at 171; 
see also 
Tex. Code Crim. Proc. Ann
. art. 36.19; 
Hutch
, 922 S.W.2d at 171. During the State’s closing argument, Brown raised three objections to the prosecutor’s characterization of the evidence.  The trial court properly overruled Brown’s objections; the prosecutor’s statements were reasonable deductions from the evidence, responses to Brown’s arguments, and a plea for law enforcement.  
See Gaddis v. State
, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); 
Jones v. State
, 119 S.W.3d 412, 428 (Tex. App.—Fort Worth 2003, no pet.); 
Wartel v. State
, 830 S.W.2d 757, 762 (Tex. App.—Houston [1st Dist.] 1992, no pet.).  Additionally, after Brown’s third objection, the trial court instructed the jury to follow the court’s charge, not the attorney’s statements if they varied from the charge.    

After reviewing the record and applying the appropriate standards of review, we conclude 
that the evidence is both legally and factually sufficient to support Brown’s conviction for assault family-violence.  
See 
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693-94 (Tex. Crim. App. 2005) 
(both giving legal sufficiency standard)
; 
see also
 
Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (both giving a factual sufficiency standard).  Based on the testimony and evidence presented at trial, the jury could have reasonably found the essential elements of the offense beyond a reasonable doubt.
(footnote: 8)  
See
 
Tex. Penal Code Ann. 
§ 22.01(a)(1), (b)(2). 

Finally, Brown’s counsel at trial effectively cross-examined the State’s witnesses and attempted to establish that Brown acted in self-defense by calling both York and Brown to testify that York started the fight and that Brown only acted as he did in order to protect himself
. 
 
Counsel points out that although the judgment from Brown’s prior assault conviction did not contain a finding of family violence and that, standing alone, it would not have conferred jurisdiction, it was sound trial strategy to stipulate to the prior conviction.  If Brown had not agreed to stipulate to his prior assault family-violence conviction, the State could have introduced extrinsic evidence to prove that Brown’s previous assault was against a family member.  
See Goodwin v. State
, 91 S.W.3d 912, 919 (Tex. App.—Fort Worth 2002, no pet.).  Thus, counsel’s performance at the guilt-innocence phase of trial was constitutionally sufficient
.  
See Strickland v. Washington
, 466 U.S. 668, 104 S. Ct. 2052 (1984).  Consequently, after reviewing the record, we have found no reversible error during the guilt-innocence phase of Brown’s trial.

C.  Punishment

Before the punishment phase of trial, Brown’s trial counsel informed the trial court that Brown agreed that he would not object to the State’s introduction of evidence of his prior unadjudicated drug possession offense in exchange for a plea offer regarding that offense.  The State also introduced the judgments from Brown’s prior convictions for unauthorized use of a vehicle, burglary of a motor vehicle, delivery of marijuana, assault, resisting arrest or search, and failure to identify.  Brown stipulated to these prior offenses.  The trial court accepted Brown’s stipulation, and the trial court admitted certified copies of the judgments in all of the prior convictions.   

After a finding of guilt, evidence may be offered by the State as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant. 
 
Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(a)(1)
 (Vernon Supp. 2005). 
 The record reveals that, prior to trial and in accordance with his request, Brown received notice of the State’s intent to introduce evidence of Brown’s prior convictions.  
See id.
 § 3(g
).  Thus, the trial court did not abuse its discretion by admitting evidence of Brown’s prior convictions.
 
Neither party objected to the trial court’s charge on punishment nor suggested adding any specially requested instructions, definitions, or questions. The court’s charge on punishment properly instructed the jury on the applicable range of punishment. 
 See
 
Tex. Penal Code Ann.
 § 12.34 (Vernon 2003). Brown’s ten-year sentence and $10,000 fine are within the statutory range for a third-degree felony.  
See id.
  Moreover, 
the judgment does not contain any improper assessment of fees.  
See Bray v. State
, 179 S.W.3d 725, 730 (Tex. App.—Fort Worth 2005, no pet.) (reforming judgment in 
Anders 
case in which judgment incorrectly included payment of attorney’s fees as condition of parole). 
 Thus, our review of the record reveals no reversible error from the punishment phase.

V.  Conclusion

Based on our independent review of the record in this case, we have determined that there is no error on which an appeal could be based or which would require reversal.  Therefore
, because we agree with counsel’s professional determination that an appeal in the instant case is frivolous, we grant counsel’s motion to withdraw and affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: February 23, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
See
 
Anders v. California
, 386 U.S. 738, 87 S. Ct. 1396 (1967).

3:
However, 
James Wesley Russell, who was at Brown’s house that day, testified that he tried to explain to the officers what he had seen but that the officers told him to “shut [his] mouth.”  He testified that the officers did not offer to let him write a statement.   

4:
We sent Brown a letter asking him to inform this court if he desired to examine the record and file a pro se brief.  He informed this court by letter that he wanted to file a pro se brief and raised several arguments in his letter regarding errors in his conviction.  However, Brown failed to file a brief.  Because the arguments in his letter are inadequately briefed, we cannot address them.  
See
 
Tex. R. App. P.
 38.1 (listing the requisites of an appellant’s brief). 

5:
Although we are not required to consider the arguments Brown raised in his letter to this court, we note that there is nothing in the record to support Brown’s contention that one juror knew Brown and that another juror knew York, the alleged victim.  
See 
Tex. R. App. P.
 38.1
, 38.9.

6:
After the trial court granted Brown a running objection to York’s out-of-court statements to any police officers, Officer Slack testified that shortly after the incident, he arrived at the scene and York explained to him that Brown had put her in a headlock and struck her several times in the face and stomach.

7:
But the trial court and Brown’s defense counsel agreed to include in the prior bad acts paragraph of the charge an instruction that the jury could consider Brown’s prior conviction for assault family-violence as proof of the jurisdictional element of the offense.    

8:
Counsel points out that there was no evidence to contradict Brown’s claim of self-defense and that, therefore, the evidence could be factually insufficient to support Brown’s conviction.  
However, 
there are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Zuniga
, 144 S.W.3d at 
484-85.  
A rational jury could conclude that the contrary evidence that Brown was acting in self-defense was not so strong that his guilt could not be proven beyond a reasonable doubt.  
See id.